**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 24, 2019**

# In the Court of Appeals of Georgia

A19A0869. WALDON et al. v. ALGER et al.

REESE, Judge.

Charles Waldon, Glenda Waldon, Inez Waldon Howard, and Sandra Waldon Dunn (collectively, "the Appellants") appeal from the trial court's dismissal of their complaint, wherein they sought injunctive relief and damages from Carla Alger, John Alger (collectively "the Appellees"), and Monte Graham. The Appellants alleged claims of breach of fiduciary duty, deprivation of personal property, and willful damage to personal property , and sought attorney fees. For the reasons set forth infra, we affirm in part, vacate in part, and remand this case for further proceedings.

Viewed in favor of the Appellants,[1] the record shows the following salient facts. As of 2015, Charles Waldon and Peggy Waldon ("the Waldons") had been married for over 68 years. Charles Waldon ("Waldon") is the father of Carla Alger ("Alger"), Glenda Waldon, Inez Waldon Howard ("Howard"), and Sandra Waldon Dunn ("Dunn"). Alger testified that three trusts were created in Florida for the benefit of the Waldons: "the Charles R. Waldon Revocable Trust[;] the Peggy Faye Waldon Revocable Trust[;] and the Waldon Family Living Trust." On April 1, 2009, Alger and Peggy Waldon were named co-trustees for the Charles R. Waldon Revocable Trust. On April 2, 2015, the Waldons and Alger were named as co-trustees for the Waldon Family Living Trust.

In July 2015, Alger petitioned a Florida court to "determine [the] capacity" of the Waldons and to establish a guardianship over them, if necessary. By orders dated September 22, 2015, the Florida court determined Waldon had limited capacity, and it appointed Elena George, a "professional guardian[,]" as the "[l]imited guardian of person and property" over Waldon.

---

[1] *Crossing Park Properties v. JDI Fort Lauderdale*, 316 Ga. App. 471 (729 SE2d 605) (2012); see *Hyperdynamics Corp. v. Southridge Capital Mgmt.*, 305 Ga. App. 283, 284 (I) (699 SE2d 456) (2010) (physical precedent only).

The record contains a transcript of a hearing which occurred on August 29, 2018 in the 11th Judicial Circuit Court, located in Miami-Dade County, Florida, to appoint a successor guardian for Waldon.[2] At the hearing, George testified that on or about October 15, 2015, Dunn called her (George) to ask if Waldon could go to lunch with her (Dunn) and Glenda Waldon. George testified that she agreed, if Waldon wanted to go to lunch with them. Waldon left his home, and George did not hear from him again until three days later. At that time, Waldon told George that he was in Georgia to "winterize" his cabin and that he would "be right back."[3] Waldon did not return to Florida.

On November 13, 2015, the Superior Court of Walker County, Georgia issued an exparte order enjoining the Appellees, John and Carla Alger, from threatening or contacting the Appellants and attempting to remove Waldon from Georgia. On the same day, the Appellants filed a verified petition for injunctive relief and damages against the Appellees and Monte Graham.

---

[2] From the record, it appears that sometime before the August 29 hearing, George sought to resign as the guardian for Waldon.

[3] The record shows that Peggy Waldon remained in Florida and that Alger was her legal guardian.

3

Meanwhile, a Florida court issued an order directing Howard, Glenda Waldon, and Dunn to return Waldon to Florida and "back into the custody of this Court's appointed guardian in Miami[,] Dade County, Florida, without delay on or before . . . February 14, 2016."

On September 4, 2018, a hearing was held in the Superior Court of Walker County. Waldon testified at the hearing that he lived in Walker County mostly by himself, and received social security benefits and food stamps. He testified that Alger and her husband "took everything [he] owned." When questioned how he had traveled from Florida to Georgia, Waldon testified that he drove, accompanied by two of his daughters, to "winterize [his] house up on Lookout Mountain." He further testified that he did not want "anybody to be over [him, and that he was his] own person." Waldon presented a Georgia driver's license issued on November 10, 2015. Waldon testified that he wanted to be with his wife, who had been "locked [up and] take[n] away from [him,]"and he wanted to remain in Georgia. Waldon testified that he would not return to Florida because he believed that he would be put in jail.

The trial court granted the Appellees' motion to dismiss all claims, finding that the "11th Judicial Circuit for Miami-Dade County[,] Florida ha[d] accepted and exercised jurisdiction over the subject matter and personal jurisdiction over the

4

parties[,]" and that this matter "would be more appropriately heard in Florida under the doctrine of forum non conveniens." This appeal followed.

A defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. When examining and deciding jurisdictional issues on a motion to dismiss, a trial court has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA § 9-11-43 (b).[4]

With these guiding principles in mind, we turn now to the Appellants' specific claims of error.

1. The Appellants argue that the trial court erred in granting the Appellees' motion to dismiss under the doctrine of forum non conveniens. We disagree.

---

[4] *Classic Commercial Svcs. v. Baldwin*, 336 Ga. App. 183 (784 SE2d 44) (2016) (citations and punctuation omitted).

5

Under the doctrine of forum non conveniens,[5]

> [a] Georgia court will dismiss an action if in the interest of justice and for the convenience of the parties and witnesses a claim or action would be more properly heard in a forum outside this state. When addressing a motion to dismiss on this ground, a trial court must consider seven factors: (1) Relative ease of access to sources of proof; (2) Availability and cost of compulsory process for attendance of unwilling witnesses; (3) Possibility of viewing of the premises, if viewing would be appropriate to the action; (4) Unnecessary expense or trouble to the defendant not necessary to the plaintiff's own right to pursue his or her remedy; (5) Administrative difficulties for the forum courts; (6) Existence of local interests in deciding the case locally; and (7) The traditional deference given to a plaintiff's choice of forum.[6]

We review an appeal of a trial court's ruling on a motion to dismiss under the doctrine of forum non conveniens under an abuse of discretion.[7]

---

[5] See OCGA § 9-10-31.1 (a) ("Forums outside this state; waiver of statute of limitations defense").

[6] *Hawkins v. Blair*, 334 Ga. App. 898, 901 (3) (780 SE2d 515) (2015) (citation and punctuation omitted).

[7] See id. at 898; see also *Hawthorn Suites Golf Resorts v. Feneck*, 282 Ga. 554, 556 (3) (651 SE2d 664) (2007) (determining whether to transfer a case under OCGA § 9-10-31.1 (a) is within the trial court's discretion and should be affirmed on appellate review absent an abuse of discretion); *Wegman v. Wegman*, 338 Ga. App. 648 (791 SE2d 431) (2016) ("When an appeal properly is taken from the grant or denial of a motion to dismiss under the doctrine of forum non conveniens, the

Here, the trial court provided a detailed analysis of the seven factors to be considered under OCGA § 9-10-31.1 (a).[8] The trial court found that: (1) most of the evidence relevant to the Appellants' breach of fiduciary duty claim arose out of the trust agreements that were executed in Florida and pertained to real and personal property, including money deposits and expenditures in Florida; (2) all of the Appellees and two of the Appellants resided in Florida, and it would be difficult for witnesses from southern Florida to be compelled to testify in northwest Georgia; (3) there were no premises claims in this litigation; (4) the Appellees incurred, and would continue to accrue, "unnecessary expenses and trouble" to litigate the claims in Georgia; (5) in addition to the Georgia courts having to apply Florida law, the Florida litigation would likely result in the Georgia matter experiencing administrative delays and scheduling conflicts due to travel arrangements and accommodations of the parties and witnesses; (6) there was "minimal local interest in adjudicating this matter

---

appellant is entitled to meaningful appellate review, even if that review is only for an abuse of discretion.") (citation and punctuation omitted).

[8] The Appellants do not dispute that the Appellees filed a written stipulation, pursuant to OCGA § 9-10-31.1 (b), that "all the defendants waive the right to assert a statute of limitations defense in all other states of the United States in which the claim was not barred by limitations at the time the claim was filed in this state as necessary to effect a tolling of the limitations periods in those states beginning on the date the claim was filed in this state and ending on the date the claim is dismissed."

7

in Georgia[;]" and (7) Florida had an interest because it had determined the limited guardianship of Waldon. Thus, the trial court ruled that, notwithstanding the deference given to the plaintiffs' choice of forum, an analysis of the seven relevant factors skewed heavily toward litigating the matter in Florida.

In light of the trial court's specific and detailed findings regarding the factors under OCGA § 9-10-31.1 (a), we conclude that the trial court did not abuse its discretion in dismissing the Appellants' complaint as to the Appellees based on forum non conveniens.[9]

2. The Appellants argue that the trial court erred in granting the Appellees' motion to dismiss because the Appellees had sufficient minimum contact with Georgia under Georgia's Long Arm Statute, OCGA § 9-10-91.[10] We note that the Appellants failed to argue the application of OCGA § 9-10-91 in the trial court and

---

[9] See *Hawthorn Suites Golf Resorts*, 282 Ga. at 557 (3).

[10] See OCGA § 9-10-91 (lists the ways in which "[a] court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state).

obtain a ruling on the matter. Consequently, this issue is not properly before this Court.[11]

3. The Appellants argue that the trial court improperly dismissed the entire action because the trial court had granted them a default judgment against Monte Graham ("Graham"). We agree, vacate the dismissal as to Graham, and remand this case.

"[W]hen a judgment is entered by default, the parties to that judgment are the plaintiff and the defaulting defendant. His default operates as an admission of the truth of the well-pleaded material facts alleged against him."[12] Upon entering a default judgment, a court may determine damages without a jury unless damages are unliquidated or result from a tort."[13]

---

[11] See *Classic Commercial Svcs.*, 336 Ga. App. at 190 (3) (Because the trial court did not rule on the application of OCGA § 9-10-91, the issue was not ripe for appellate review.); see also *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002) ("[A]n appellate court is, among other things, a court for the correction of errors of law. An error of law has as its basis a specific ruling made by the trial court.") (citation and punctuation omitted).

[12] *Peek v. Southern Guar. Ins. Co.*, 240 Ga. 498, 499 (1) (241 SE2d 210) (1978).

[13] See OCGA § 9-11-55 (a); see also *Revels v. Wimberly*, 223 Ga. App. 407, 409 (2) (477 SE2d 672) (1996).

The trial court granted a default judgment against Graham for failure to file any responsive pleadings in this matter, and "the issue of damages [was] reserved for a further hearing." In addition, the record shows that Graham has not sought to open the default under OCGA § 9-11-55 (b).[14]

Based on the foregoing, Graham remains a party to this case and is subject to further proceedings in the trial court. Consequently, the trial court erred in dismissing this action as to Graham. The order dismissing this action must be vacated and the matter remanded to the trial court to enter an order consistent with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded. Miller, P. J., and Rickman, J., concur.*

---

[14] See OCGA § 9-11-55 (b) ("At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court."); *BellSouth Telecommunications v. Future Communications*, 293 Ga. App. 247, 248 (666 SE2d 699) (2008) ("The rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme situations. Whenever possible, cases should be decided on their merits for default judgment is not favored in law.") (citation and punctuation omitted).